IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                        Case Nos.:  3:19cr100/RV/HTC
                                                       3:22cv122/RV/HTC

DAVID DENVER HOLLAND

---

## ORDER AND
## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant David Denver Holland's Motion

to Vacate Under 28 U.S.C. § 2255, ECF Docs. 62, 64, and Motion to Adduce Dash

Cam Video, ECF Doc. 71.   For the reasons set forth below, the motion to adduce

the video is GRANTED.   Also, upon careful review of the record, the

Government's responses, ECF Docs. 70, 74, and Defendant's reply, ECF Doc. 73,

the undersigned recommends the § 2255 motion be denied without an evidentiary

hearing.[1]   *See* Rules 8(a) and (b), Rules Governing Section 2255 Cases.

## I.     BACKGROUND

On August 20, 2019, a federal grand jury charged Defendant in a single-count

indictment with possession of a firearm and ammunition by a convicted felon.    ECF

---

[1] The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.   *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).

Doc. 1.    The discovery of the firearm and ammunition occurred during the execution of an arrest warrant on Defendant for fleeing and eluding.    As will be discussed further below, probable cause for the arrest warrant was provided by Escambia County Sheriff's Deputy Jim Reaves, who swore in an incident report that Defendant fled from him, while driving in a red Dodge Ram truck, after the deputy activated his lights and sirens.

The facts below are derived from the Statement of Facts Defendant executed as part of his guilty plea, and which he admitted were true and correct.    ECF Doc. 21, *see also,* ECF Doc. 53 at 10 (change of plea hearing transcript).    On May 7, 2019, Escambia County Sheriff's Office ("ESCO") deputies went to Defendant's residence to serve an active arrest warrant on Defendant.    After obtaining permission to enter the residence from Defendant's father, deputies observed Defendant standing in the doorway of his bedroom.    Believing Defendant had something in his hand he was trying to hide, deputies directed Defendant to show his hands and apprehended him in the bedroom doorway.    During the apprehension, one of the deputies observed ammunition in plain view inside Defendant's bedroom. Upon entering the bedroom to retrieve the ammunition, a deputy observed, in plain view, a pistol laying behind the bedroom door where Defendant had appeared to be

trying to hide something earlier.    Deputies seized the Taurus 9millimeter pistol and the Federal Cartridge Company 9millimeter ammunition.

On November 14, 2019, Defendant, represented by Assistant Federal Public Defender Randall Lockhart, pled guilty pursuant to a written plea agreement, statement of facts and sealed supplement.    ECF Docs. 21-23, 53.    Prior to pleading guilty, Defendant told his counsel he could not be the person who fled from ESCO deputies because he was out of town on the day of the incident.[2]    Mr. Lockhart, however, told Defendant even if the arrest warrant was based on inaccurate information, there was no valid Fourth Amendment claim because the deputies who executed the warrant had a good faith basis for believing the warrant was valid *and* Defendant's father allowed the deputies into the residence.    Thus, after extensive discussions with counsel about the advantages and disadvantages of going to trial, including going over the government's evidence, Defendant decided to plead guilty. At Defendant's change of plea hearing, he told the Court he had enough time to discuss the case with Mr. Lockhart and also that he was satisfied with the representation he had received.    ECF Doc. 53 at 13.

---

[2] Mr. Lockhart provided an affidavit for the government, which is attached to the government's response.    ECF Doc. 70-1.    The information herein regarding what Mr. Lockhart did and his communications with Defendant come from that affidavit.

About two weeks after Defendant pled guilty, he told Mr. Lockhart he wanted to withdraw the plea because "he believed the fleeing and eluding warrant was bogus." ECF Doc. 70-1 at 4. Mr. Lockhart reached out to Defendant's counsel in the state case, assistant public defender Kimberly Reece, who agreed "[e]ven a reasonableness standard would support the warrant where the cop is saying he recognized client from earlier incidents and saw him driving on that date." *Id.* at 28. After Mr. Lockhart showed the email exchange to Defendant and discussed the potential the court would not allow the withdrawal of the plea and Defendant would lose acceptance of responsibility, Defendant decided not to withdraw his plea. On March 19, 2020, the District Court sentenced Defendant to a within-guidelines sentence of 60 months' imprisonment. ECF Docs. 39, 40, 41, 51.

In September of 2020, the two state charges against Defendant were dismissed for "insufficient evidence to prove the charges beyond a reasonable doubt." ECF Doc. 70-1 at 5, 29. Defendant contacted Mr. Lockhart about the dismissal and also told Mr. Lockhart ESCO had terminated Deputy Reaves for misconduct. He asked Mr. Lockhart to look into the matter and to obtain Deputy Reaves' dash cam video, because Defendant did not believe any such video existed as Deputy Reaves made up the fleeing incident. Mr. Lockhart also contacted Defendant's then current state

Assistant Public Defender, Casey J. Etheridge, to determine whether Deputy Reaves

had engaged in misconduct in Defendant's case.    Ms. Etheridge advised him via

email that she believed the state case was dismissed because Deputy Reaves was

"the only witness and no longer considered credible," and not for misconduct.    *Id.*

at 32.    Mr. Lockhart also contacted the state's attorney, Ki McInnis, who confirmed

Defendant's case was dismissed because the state was concerned Deputy Reaves

would not be a credible witness given his termination.    *Id.* at 6.

McInnis also gave Mr. Lockhart a copy of the dash cam video.    Mr. Lockhart

watched the video and determined it showed "Reaves pursued a red Dodge truck that

ultimately fled once lights and siren were activated."    *Id.*    While there were

inconsistencies between the video and the police report, it "struck" Mr. Lockhart that

there was a video at all given Defendant's claim the incident was made up and that

the video was "largely" consistent with what Deputy Reaves wrote in the incident

report.    *Id.*    Mr. Lockhart could not conclusively determine from the video that

Defendant was not the driver.    Also, Mr. Lockhart confirmed from Defendant's

driving record that Defendant had received multiple citations while driving the same

or same type of pick-up truck shown in the video.    Thus, Mr. Lockhart concluded

there was nothing from the dash cam video that he could use in the federal case.

In the motion to vacate, Defendant raises five grounds of error, all premised on the arrest warrant and dash cam video.[3]    Namely, Defendant maintains he was not the driver of the Dodge Ram in the fleeing and eluding incident and Deputy Reaves lied about the incident; thus, there was no probable cause for the arrest warrant.    Defendant argues his Fourth Amendment rights[4] were violated when his father's residence was searched, tainting all evidence seized.    He further argues Mr. Lockhart was ineffective for not discovering and raising these Fourth Amendment claims during the investigation of his case.    Finally, Defendant contends the Government should have produced the dash cam video to him as exculpatory evidence.

## II.    GENERAL STANDARD OF REVIEW

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing."    *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014). A prisoner is entitled to relief under section 2255 if the court imposed a sentence

---

[3] Although the motion contains six grounds for relief, the last ground is simply a request for discovery.  However, because the undersigned finds an evidentiary hearing to be unwarranted, such a request should be denied.

[4] To the extent Defendant seeks to raise a stand-alone Fourth Amendment claim, that would be procedurally barred because "Fourth Amendment claims are not cognizable on collateral review so long as the defendant had a 'full and fair' opportunity to litigate the claim at trial or on direct appeal."  *See Stone v. Powell,* 428 U.S. 465 (1976).  Defendant had the opportunity to raise this claim and did not.  *Bailey v. United States*, 2011 WL 2270183 at * 3 (M.D. Fla. June 6, 2011).

Case Nos.: 3:19cr100/RV/HTC; 3:22cv122/RV/HTC

that (1) violated the Constitution or laws of the United States, (2) exceeded its

jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise

subject to collateral attack.    *See* 28 U.S.C. § 2255(a).

Although "a defendant generally must advance an available challenge to a

criminal conviction or sentence on direct appeal or else the defendant is barred from

presenting that claim in a § 2255 proceeding," *Lynn v. United States,* 365 F.3d 1225,

1234 (11th Cir. 2004), claims of ineffective assistance of counsel are properly raised

by a § 2255 motion regardless of whether they could have been brought on direct

appeal, *Massaro v. United States*, 538 U.S. 500, 503 (2003).    To prevail on a claim

of ineffective assistance of counsel, a defendant must show (1) his attorney's

representation fell below "an objective standard of reasonableness," and (2) a

reasonable probability exists that, but for counsel's unprofessional conduct, the

result of the proceeding would have been different.    *Strickland v. Washington*, 466

U.S. 668, 687 (1984).    The movant bears the burden of proof on the "performance"

prong as well as the "prejudice" prong, and both prongs must be proven to prevail.

*Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001).

To show counsel's performance was unreasonable, a defendant must show

"no competent counsel would have taken the action that his counsel did take."

*Hollis v. United States*, 958 F. 3d 1120, 1122 (11th Cir. 2020) (citation omitted).

When reviewing the performance of an experienced trial counsel, the presumption

that counsel's conduct was reasonable is even stronger, because "[e]xperience is due

some respect."  *Chandler v. United States*, 218 F.3d 1305, 1316 n. 18 (11th Cir.

2000).   To establish the second prong, prejudice, a defendant must show, but for

counsel's deficient performance, the outcome of the proceeding would have been

different.   *Strickland*, 466 U.S. at 694; *Jenkins v. Comm'r, Ala. Dep't of Corr.,* 963

F. 3d 1248 (11th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 112

(2011)).

## III.  ANALYSIS

### A.    Defendant's Motion to Adduce the Dash Cam Video

As stated above, Defendant has filed a motion for the Court to review the dash

cam video and supplement the record with the video.   ECF Doc. 72.   The

Government opposes the motion and argues the dash cam video is irrelevant to the

claims raised in the motion to vacate because, even if there was no basis for the arrest

warrant, it would not undermine Defendant's federal charges.   Additionally, the

Government argues it has reviewed the dash cam video and it does not support

Defendant's position.

Since Defendant and the Government have reviewed the video, the Government argues the video was not exculpatory evidence, as Defendant alleges, and Defendant's counsel, Mr. Lockhart, considered the video in determining whether Defendant had a viable Fourth Amendment claim in the federal case, the undersigned cannot say the video has no relevance.    Defendant's motion to adduce video evidence is, therefore, GRANTED.    However, as discussed in detail below, having reviewed the dash cam video, the undersigned agrees with the Government – it is neither exculpatory evidence nor supports Defendant's grounds for relief.

**B.    Grounds One, Two, Three and Four – Failure to Raise Fourth Amendment Claim**

In the first four grounds of relief, Defendant argues counsel was ineffective for failing to raise a Fourth Amendment claim based on Deputy Reaves' fabrication of the fleeing and eluding incident and had he done so the evidence during the execution of the arrest warrant would have been tainted, and thus, excluded. Defendant is not entitled for relief on this ground because he has shown neither deficient performance nor prejudice as required by *Strickland*.

As set forth above, Defendant told Mr. Lockhart prior to the guilty plea he did not flee and elude ESCO officers because he was out of town on March 31, 2019, at the time of the incident.    After speaking with Defendant's father, who confirmed

he let deputies into the residence, and considering the deputies who executed the

arrest warrant were not the ones who secured the warrant, Mr. Lockhart determined

any lack of probable cause for the arrest warrant was irrelevant.   Mr. Lockhart,

therefore, made a strategic determination it was unnecessary to inquire further into

whether Defendant was the driver of the Dodge Ram on March 31.

Counsel cannot be adjudged incompetent for performing in a particular way

in a case, as long as the approach taken "might be considered sound trial strategy."

*Darden v. Wainwright,* 477 U.S. 168, 186 (1986).    This Court should not "second-

guess" that decision.    *See Chandler v. United States*, 218 F.3d 1305, 1314-15 (11th

Cir. 2000) ("We must avoid second-guessing counsel's performance"); *Waters v*

*Thomas,* 46 F.3d 1506, 1522 (11th Cir. 1995) ("it does not follow that any counsel

who takes an approach we would not have chosen is guilty of rendering ineffective

assistance").    Moreover, "[e]ven if counsel's decision appears to have been unwise

in retrospect, the decision will be held to have been ineffective assistance only if it

was 'so patently unreasonable that no competent attorney would have chosen it.'"

*Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (quoting

*Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).

Mr. Lockhart's determination was not patently unreasonable.   As discussed below, the good faith exception would have precluded a successful Fourth Amendment challenge to the arrest warrant.   Thus, the undersigned does not find Mr. Lockhart's pretrial investigation and failure to discover the dash cam video to be ineffective.   Additionally, even if Mr. Lockhart could be faulted for not discovering the dash cam video, there was no prejudice to Defendant because, also as discussed below, the dash cam video does not show Deputy Reaves lied about the incident.

On April 5, 2019, an Escambia County Judge issued a warrant for Defendant's arrest.   The warrant was issued based on Deputy Reaves's oath that Defendant had violated two provisions of the Florida Statutes:   section 316.1935.3a, fleeing and eluding police with disregard to the safety of persons or property, and section 322.34.21, driving while license suspended or revoked.   ECF Doc. 64 at 43.   The statement of probable cause in the arrest warrant was derived from the incident report completed by Deputy Reaves.   ECF Doc. 70-1 at 24; *see* Incident Report, ECF Doc. 64 at 65.

On March 31, 2019, Deputy Reaves observed a red Dodge Ram exit a parking lot and fail to yield before entering the roadway.   Deputy Reaves got behind the

vehicle and activated his lights and sirens.    Once Deputy Reaves realized the driver

was not going to stop, he relayed the information over the radio.    Deputy Reaves

recognized the vehicle from a previous encounter and identified the driver as

Defendant, someone with whom he had previously had contact.    Deputy Reaves

was also familiar with Defendant having fled deputies before in the same vehicle.

Deputy Reaves observed the vehicle run a red light, at which point Deputy Reaves

deactivated his lights and siren and discontinued pursuit.

Other law enforcement units assisted in locating the vehicle, which was

discovered unoccupied.    A nearby resident reported having seen a white male

wearing a hat and tan jacket running along the street carrying three bags.    Based on

that description, Deputy Reaves confirmed the person the resident saw was

Defendant.    Deputies unsuccessfully attempted to track Defendant using a K-9.

ECF Doc. 70-1 at 24; ECF Doc. 64 at 65.

When counsel's alleged ineffectiveness involves a failure to litigate a Fourth

Amendment claim, to demonstrate actual prejudice the defendant must prove his

Fourth Amendment claim is meritorious and there is a reasonable probability the

verdict would have been different absent the excludable evidence.    *Kimmelman v.*

*Morrison*, 477 U.S. 365, 375 (1986); *Green v. Nelson*, 595 F.3d 1245, 1251-52 (11th

Cir. 2010).   Defendant cannot meet that burden here.

First, Defendant's allegations against Deputy Reaves are purely conclusory.

Conclusory allegations cannot support habeas relief.   *See e.g., Lynn v. U.S.*, 365

F.3d 1225, 1239 (11th Cir. 2004) (district court was not required to hold evidentiary

hearing on issues supported only by conclusory allegations).   Similarly,

"[u]nsupported conclusory allegations of falsehood or material omission cannot

support a *Franks*[5] challenge; to mandate a hearing, the plaintiff must make specific

allegations accompanied by an offer of proof."   *See Velardi v. Walsh,* 40 F.3d 569,

573 (2d Cir. 1994).

Second, the dash cam video does not show Deputy Reaves lied in his probable

cause statements.   To the contrary, the dash cam video shows Deputy Reaves

pursuing a red Dodge Ram, which ran a red light after Deputy Reaves initiated lights

and sirens.   While the driver's face cannot be seen from the video, after lights and

sirens were activated, the back of the driver is visible.   And, while it may not have

been obvious who the driver was to a deputy unfamiliar with him, Deputy Reaves

had encountered Defendant before and had seen Defendant drive a similar vehicle

---

[5] *Franks v. Delaware*, 438 U.S. 154 (1978).

in the past – facts Defendant does not dispute.    Thus, nothing in dash cam video shows Reaves lied about the incident.

Third, probable cause for an arrest exists when law enforcement officials have "facts and circumstances" within their knowledge sufficient to warrant a reasonable belief that a suspect had committed or was committing a crime.    *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019).    "Probable cause is not a high bar" and does not require "convincing proof that an offense was committed."    *Id*. at 1286.    It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."    *Illinois v. Gates*, 462 U.S. 213, 243 n.13, (1983).    "In dealing with probable cause, ... we deal with probabilities.    These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."    *Marx v. Gumbinner*, 905 F.2d 1503, 1507 (11th Cir. 1990) (citing *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). "So long as it is reasonable to conclude from the body of evidence as a whole that a crime was committed, the presence of some conflicting evidence or a possible defense will not vitiate a finding of probable cause."    *Paez*, 915 F.3d at 1286.    A statement by one person can form probable cause.    *See Llauro v. Tony*, 470 F. Supp. 3d 1300, 1312 (S.D. Fla. 2020), *aff'd sub nom. Llauro v. Linville*, 2021 WL 5767935

(11th Cir. Nov. 6, 2021) ("The bar is so low the Eleventh Circuit has found the statements of a single witness sufficient to establish probable cause") (*citing Martin v. Wood,* 648 F. App'x 911, 916 (11th Cir. 2016) (finding probable cause for arrest based on a statement from the plaintiff's sister the plaintiff was mismanaging the funds in their mother's trust)).    Here, Deputy Reave's statements about Defendant fleeing in the Dodge Ram were sufficient to provide probable cause for the arrest warrant.

Finally, even if Deputy Reaves had lied, the warrant was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable".   *United States v. Martin*, 297 F. 3d 1308, 1313 (11th Cir. 2002). In other words, the deputies who executed the warrant had no reason to believe the warrant was not supported by probable cause and as such relied on it in good faith. *Id.*   Evidence obtained by law enforcement acting in good faith or reasonable reliance on a warrant should generally not be excluded, even if the warrant is ultimately found to be unsupported by probable cause.   *See United States v. Leon,* 468 U.S. 897, 918-22 (1984) (holding the exclusionary rule does not apply when law enforcement acts with an objectively reasonable good-faith belief in the validity of and within the scope of a warrant ultimately found to be unsupported by probable

cause); *United States v. Lebowitz*, 676 F. 3d 1000, 1011 (11th Cir. 2012) (holding

that generally "courts should not exclude evidence obtained by police officers acting

in reasonable reliance on a search warrant").

Thus, counsel was not deficient for failing to raise a Fourth Amendment claim

based on Reaves's alleged misstatements or the fruit of the poisonous tree doctrine

because such a claim would have been unsuccessful.   *See, e.g., Hollis v. United*

*States,* 958 F.3d 1120, 1124 (11th Cir. 2020) (counsel not constitutionally ineffective

for failing to raise meritless objection to use of prior drug convictions as predicate

offenses under ACCA).   No such argument would have been sufficient to

invalidate the arrest warrant, and thus, none of the evidence seized was tainted.

Defendant is not entitled to relief on Grounds One, Two, Three, or Four.

### C. Due Process Violation

In Ground Five, Defendant argues his Due Process rights were violated

because the prosecutor violated *Brady* and *Giglio* by failing to disclose exculpatory

evidence – once again, the dash cam video.   In *Brady v. Maryland*, 373 U.S. 83

(1963), the Supreme Court held that the suppression by the prosecution of evidence

favorable to the accused upon request violates due process where the evidence is

material either to guilt or to punishment, irrespective of the good faith or bad faith

of the prosecution.  *Id.*   In *Giglio v. United States*, 405 U.S. 150 (1972), the

Supreme Court held that when the prosecution solicits or fails to correct known false

evidence, due process requires a new trial when "the false testimony could in any

reasonable likelihood have affected the judgment of the jury." 405 U.S. at 154

(quotation and citation omitted) (ellipsis omitted).   Neither *Brady* nor *Giglio*

applies to the dash cam video.   As discussed above, the video is not what Defendant

contends.   The video is not exculpatory to the federal firearm charge and does not

show the arrest warrant was fabricated.

## IV.   CONCLUSION

For the foregoing reasons, the undersigned finds Defendant has failed to show

the claims raised in his motion to vacate, set aside, or correct sentence pursuant to

28 U.S.C. § 2255 have merit.   Nor has he shown an evidentiary hearing is

warranted.   Therefore, the undersigned recommends Defendant's motion be denied

in its entirety.

## V.   CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that

"[t]he district court must issue or deny a certificate of appealability when it enters a

final order adverse to the applicant," and if a certificate is issued "the court must

state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the Court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED

Defendant's Motion to Adduce Dash-Cam Video (ECF Doc. 71) is GRANTED.

Case Nos.: 3:19cr100/RV/HTC; 3:22cv122/RV/HTC

It is also RECOMMENDED:

1.    The Motion to Vacate, Set Aside, or Correct Sentence (ECF Doc. 62) be

DENIED.

2.    A certificate of appealability be DENIED.

At Pensacola, Florida, this 25th day of August, 2022.


*s/ Hope Thai Cannon*
**HOPE T. CANNON**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.

Case Nos.: 3:19cr100/RV/HTC; 3:22cv122/RV/HTC